UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARGOT AUSTIN, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. 4:20-CV-03363 |
| THE CREEK GROUP COMPANY, *et al.*, | § § § | |
| Defendants. | § | |

## ORDER

Before the Court are Plaintiffs' Motion for Partial Summary Judgment (the "Motion) (Doc. #41), Defendants' Response (Doc. #55), and Plaintiffs' Reply (Doc. #56). Having considered the parties arguments, submissions, and the applicable law, the Court grants Plaintiffs' Motion in part.

**I.      Background**

Plaintiff Margot Austin worked as a bartender and waitress for Defendant the Creek Group Company ("Creek Group") for three years. Doc. #1 ¶ 21. During that time, Ms. Austin worked over forty hours per week and was paid $2.13 per hour. *Id.* ¶ 22. On September 29, 2020, Ms. Austin filed this class action lawsuit on behalf of herself and other similarly situated waiters and bartenders (the "Wait Staff") alleging that Defendants Creek Group and Gary Mosely, the owner of the Creek Group, violated the minimum wage and overtime pay requirements of the Fair Labor Standards Act ("FLSA"). Doc. #1. Specifically, Plaintiffs claim that Defendants paid the $2.13 wage "based on the assumption that [it] could take a credit for the remaining minimum wage." *Id.* ¶ 23. Plaintiffs also allege that Defendants required the Wait Staff to share tips with managers and to use tips to pay for aprons, shortages in the cashier drawers, and credit card charge backs and

disputes. *Id.* ¶¶ 25–26. Plaintiffs now move for partial summary judgment to prevent Defendants from claiming affirmative defenses under the FLSA. Doc. #41.

## II. Federal Rule of Civil Procedure 56

Summary judgment is proper when there is no genuine dispute of material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(a). A district court "may accept as undisputed the movant's version of the facts and grant [the] motion . . . when the movant has made a prima facie showing of entitlement to summary judgment." *Better Bags, Inc. v. Ill. Tool Works, Inc.*, 939 F. Supp. 2d 737, 740 (S.D. Tex. 2013). Additionally, "even where the underlying facts are undisputed, . . . the court must indulge every [r]easonable inference from those facts in favor of the party opposing the motion." *Am. Tel. & Tel. Co. v. Delta Commc'ns Corp.*, 590 F.2d 100, 101–02 (5th Cir. 1979). However, summary judgment "may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Rogers v. Bromac Title Servs., LLC*, 755 F.3d 347, 350 (5th Cir. 2014).

## III. Analysis

Plaintiffs argue that Defendants are not entitled to the "tip credit" and "good faith" defenses that protect employers who violate the minimum wage requirements of the FLSA. *See* Doc. #41 at 9, 13. The Court considers the merits of the arguments against each defense in turn.

### a. The Tip Credit Defense

First, Plaintiffs argue that Defendants failed to meet the requirements for the tip credit defense. *Id.* at 9. Generally, the FLSA requires that employers pay their employees a general minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). However, the tip credit is an

affirmative defense that allows employers to pay "tipped employees"[1] $2.13 per hour when the employees' tips equal at least $5.12 per hour, the difference between $2.13 and the general minimum wage. *See* § 203(m)(2)(A); *Ettorre v. Russos Westheimer, Inc.*, No. 21-20344, 2022 WL 822181, at *2 (5th Cir. Mar. 18, 2022) (per curiam). To be eligible for the tip credit, (1) the employer must inform tipped employees of the tip credit provisions (the "notice requirement"); and (2) the employees must retain all tips received, unless the tips of employees who "customarily and regularly" receive them are pooled. *See* § 203(m)(2)(A); *Gustavus v. Cazos, Inc.*, 774 F. Supp. 2d 856, 858 (S.D. Tex. 2011).

Plaintiffs argue that Defendants are not entitled to the tip credit because Defendants did not satisfy the notice requirement. Doc. #41 at 12. To satisfy the notice requirement, Defendants "must affirmatively inform its tipped employees of the tip credit components." *See Ettorre*, 2022 WL 822181, at *3. Defendants, as Plaintiffs' employers, bear the burden of proving that it is entitled to the tip credit. *See id.* at *2; *Guillory v. PF & B Mgmt., LP*, No. H-11-4377, 2013 WL 1181439, at *3 (S.D. Tex. Feb. 27, 2013). "If an employer fails to comply with § 203(m)'s requirements, it 'must be divested of its statutory tip credit for the relevant time period.'" *Ettorre*, 2022 WL 822181, at *2 (quoting *Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 246 (5th Cir. 2016)).

Defendants provide evidence of three forms of notice. First, Defendants state that "[d]uring the initial hiring process, managers advised Plaintiffs [that] they would be compensated at a rate of $2.13 per hour plus tips as a server or bartender, that bartenders/servers would participate in a tip pool split among other customarily and regularly tipped employees, and that a portion of their

---

[1] A "tipped employee" is one who "customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t). It is undisputed that Plaintiffs were tipped employees. *See* Doc. #1 ¶ 21 (stating that Ms. Austin was a tipped employee); Doc. #11 ¶ 21 (admitting that Ms. Austin was a tipped employee).

tips would be used to fulfill the minimum wage requirements." Doc. #55 ¶ 12. For this proposition, Defendants rely on a declaration from Gunnar Crew, Defendants' former Assistant Operations Manager and current Interim Operating Manager. *Id.*, Ex. 1. Although Mr. Crew states that Defendants "implemented a policy to go over the pay rate, tip credit[,] and tip pool information in the onboarding process," Mr. Crew does not specify exactly when that policy was implemented. *Id.*, Ex. 1 ¶ 8. More importantly, Mr. Crew does not specifically attest that Plaintiffs were told about the pay rate, tip credit, and tip pool information during their respective onboarding processes. *Id.* Based on Mr. Crew's statements, it is possible that the aforementioned policy was adopted after Plaintiffs were hired, and Plaintiffs were not properly informed about the tip credit components during their onboarding. Furthermore, no other evidence in the record, including depositions of Defendants' representatives, confirms that such a policy existed at the time Plaintiffs were hired.

Next, Defendants point to the employee handbook, which Defendants provided to all new employees and "required each new employee to sign an acknowledgement stipulating that the employee reviewed and was aware of the terms and conditions contained therein[,] including certain provisions regarding compensation and tipping." *Id.* ¶ 12 (citing *id.*, Ex. 4 (employee handbook), Ex. 3 (employee personnel files)). Plaintiffs argue that Defendants "did not provide tip acknowledgement forms to employees or place them in their employee file." Doc. #41 at 12. Although the employee handbook includes a provision entitled "Time Keeping, Schedules, & Compensation," nowhere in that section or any other part of the handbook does it outline the tip credit components. In fact, the employee handbook does not even mention or discuss the FLSA's minimum wage requirements. Wages are only mentioned in reference to accurate timekeeping and payroll deductions. Doc. #55, Ex. 4 at 28–29. Similarly, none of the documents included in

the employee personnel files explain the tip credit components. *Id.*, Ex. 3; *see also* Doc. #41, Ex. 5 at 4–5 (deposition of Creek Group Corporate Representative Cynthia Cantu). A couple of Plaintiffs wrote on their employment applications that they required $2.13 per hour as a base salary. *See, e.g.*, Doc. #55, Ex. 3 at 3, 83 (showing employees filled in a salary requirement of $2.13 on their employment applications)); *cf.* Doc. #55, Ex. 3 at 21, 34 (showing the "pay rate" blank on employee's forms within a section entitled "Office Use Only," suggesting that someone other than the employee filled in the pay rate). But the $2.13 per hour salary requirement on their job applications do not prove that Plaintiffs were affirmatively informed about the tip credit components by Defendants. *See Ettorre*, 2022 WL 822181, at *3 (finding that plaintiff knowing that she was paid $2.13 per hour does not prove that plaintiff "*was told by her employer* that she would be paid $2.13 per hour").

Finally, Defendants argue that it worked with a third-party human resources/payroll company that provided FLSA-compliant minimum wage posters for the restaurant's kitchens and provided detailed pay stubs, including cash wages and tips, for each employee. Doc. #55 ¶ 13 (first citing Doc. #55, Ex. 5 (FLSA poster); and then Doc. #55, Ex. 6 (employee pay stubs)). Plaintiffs contend that there were no posted signs or posters outlining FLSA wage requirements during the time they were employed by Defendants. *See* Doc. #41, Ex. 2 ¶ 14, Ex. 3 ¶ 14. Although the FLSA poster includes a general explanation of the tip credit components, Defendants do not point to any evidence in the record that proves that the posters were hung and visible during the time of Plaintiffs' employment. Moreover, a general statement that the tip credit exists under the FLSA does not satisfy Defendants' burden to affirmatively inform Plaintiffs of the tip credit components. The pay stubs are also insufficient evidence that Defendants satisfied the notice requirement. Like the documents in the employee personnel file, the pay stubs merely prove that

Plaintiffs knew how much they were paid and how much they received in tips. But the pay stubs do not prove that Plaintiffs were told by Defendants how much they would be paid and tipped before they were actually paid that amount, nor does it suggest that Plaintiffs were informed about any of the other components of the tip credit. *See Ettorre*, 2022 WL 822181, at *3.

Defendants have failed to identify any evidence that meets its burden of proof for the FLSA's tip credit notice requirement. As such, the Court need not analyze whether the tips were pooled appropriately. The Motion is granted as to Defendants' use of the tip credit defense.

### b. The Good Faith Defense

Next, Plaintiffs move for liquidated damages, arguing that Defendants cannot "prove that [it] acted in good-faith and on reasonable grounds in determining that the compensation practices were lawful." Doc. #41 at 13. Specifically, Plaintiffs argue that Defendants did not consult with attorneys, the Department of Labor, or any other source to confirm that its compensation practices complied with the FLSA. *Id.* at 14. Plaintiffs also note that Defendant Gary Mosely, the owner of the Creek Group, stated during his deposition that he "could not recall" getting advice on the requirements for employee overtime pay. *Id.*; *id.*, Ex. 4 at 7; Doc. #1 ¶ 11.

When a plaintiff seeks liquidated damages under the FLSA, the court may award a lesser amount of liquidated damages or none at all if the court finds that the employer's actions were in "good faith and that [the employer] had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260; *Barcellona v. Tiffany Eng. Pub, Inc.*, 597 F.2d 464, 468 (5th Cir. 1979). The employer bears the "substantial burden" of proving he is entitled to the good faith defense. *Singer v. City of Waco*, 324 F.3d 813, 823 (5th Cir. 2003). To obtain the good faith defense, the employer has "some duty to investigate potential liability under the FLSA." *Barcellona*, 597 F.2d at 469.

To prove that they met their burden, Defendants aver that it "hired and consulted with a third-party human resources/payroll company to handle payroll and to ensure FLSA compliance"; sought the counsel of attorneys on payroll issues; and used a computer system to track sales, employee work time, and tip information. Doc. #55 ¶ 31; *see* Doc. #41, Ex. 4 at 3–5 (Mr. Mosely's deposition); Doc. #55, Ex. 1 ¶¶ 8–9 (Mr. Crew's declaration). When asked who he spoke to about federal laws on minimum wage and overtime, Mr. Mosely stated during his deposition that he asked questions of Affiliated Payroll, the payroll company, and the law firm of Chamberlain & Hicks about payroll, minimum wage, and overtime requirements. *See* Doc. #41, Ex. 4 at 4–5. Gregory Mitchell, another Creek Group corporate representative, confirmed that Defendants used a payroll computer software to manage tip information, particularly when tipped employees received insufficient tips to meet the minimum wage requirement. *Id.*, Ex. 1 at 10. Based on this evidence, Defendants acted in good faith and could reasonably believe that it fulfilled its duty to investigate potential liability under the FLSA. Therefore, Plaintiffs' Motion is denied as to the good faith defense.

### IV. Conclusion

For the foregoing reasons, Plaintiffs' Motion is GRANTED as to tip credit defense because Defendants failed to satisfy the notice requirement and DENIED as to the good faith defense because Defendants fulfilled its duty to investigate possible liability under the FLSA.

It is so ORDERED.

__JAN 1 3 2023__
Date

_____
The Honorable Alfred H. Bennett
United States District Judge